## 8977

### THE UNION BUILDING & LOAN ASSOCIATION v. McNALLY.

#### (83 S. E. 867.)

EVIDENCE.   BUILDING AND LOAN ASSOCIATIONS.   ACCOUNTS.   APPEAL AND ERROR.   INTEREST.

1. The entry on an account book of an admitted loan of $200, and regular monthly credits of $1, as interest due thereon, for seven months, followed by a debit entry for $400, and the increase of the monthly credits for interest from $1 to $3 for twenty-four months following, supports the inference and finding that the increased credits for interest were applicable to a loan for $400, made at the time stated, rather than to the prior loan for $200.
2. The method in which accounts are kept is a circumstance to be considered in determining the facts evidenced by them.
3. Findings of fact supported by circumstantial evidence, and concurred in by the master and Circuit Court, affirmed on appeal.
4. Interest is recoverable on attorney's fees, included in amount found due on bond and mortgage under stipulation therein contained, from the date of the master's report finding amount due for which judgment is given.

Before SHIPP, J., Union, February, 1914.   Affirmed.

Action on bonds and mortgage by Union Building & Loan Association.   The master reported that there was due plaintiff by defendant, on the bonds and mortgage set out in the complaint, on the 19th day of January, 1914, the sum of $567.32 for principal and interest, and the further sum of $56.73 for attorney's fee, making a total indebtedness at that date of $624.05, for which the plaintiff was entitled to judgment and foreclosure.   From a decree confirming this

report, and giving judgment accordingly, the defendant appealed on the following exceptions:

1. Because his Honor erred in overruling, and not sustaining the defendant's first exception to the master's report, as follows:

"1. Because the master erred (after adopting the method and plan of calculation suggested by defendant) in not allowing the defendant credit for all payments made by him to the plaintiff, and especially all payments made by the defendant prior to May 15, 1901, whether denominated interest or premium payments, or by whatever term called, and especially all payments made by defendant to May (inclusive) in 1903. The master should have, as directed by the Supreme Court in sending this case back to the master, give defendant credit on the bonds at their respective dates, for the withdrawal value of the stock assigned and surrendered, according to the constitution and by-laws of plaintiff association; and the master erred in not basing his calculation upon such basis."

It being respectfully submitted that his Honor erred in not allowing defendant credit for all payments appearing upon defendant's pass book, the correctness of which was in no way questioned, whether denominated stock, interest or premium payments; and his Honor erred in deducting from the sum of such payments the amount of $60, holding that said amount was interest and premium paid on a prior loan of May 15th, 1901, and that same had been repaid before the $600 loan (June 17th, 1903); and erred in holding that said $60, disallowed defendant by the master and the Circuit Judge, was a credit on other and entirely different debts, with which the said loan had no connection.

2. Because his Honor erred in overruling and in not sustaining defendant's second exception to the master's report, as follows:

"2. Because the master erred in finding that there had been a prior loan to those represented by the bonds in this

case, and in finding that there was interest and premiums
paid by defendant on a prior loan, and in giving defendant
credit for only $214.40 at date of second bond; whereas, the
master should have based his calculation upon the bonds as
they appeared upon their faces, and given credit for all pay-
ments made by defendant as appears by defendant's receipts
from the plaintiff association and represented by the defend-
ant's pass book, which was put in evidence, the correctness
of which was not questioned.   Under the order of Judge
Memminger herein, affirmed by the Supreme Court, and the
undisputed evidence in this case, the master erred in not
approving the calculation submitted by the defendant herein;
and the master erred in adopting the calculation submitted
by the plaintiff herein, and especially did he err in disallow-
ing defendant credit in his (the master's) calculations for
certain payments specified by the master in his report, and in
not allowing the defendant credit for all payments shown
on his (defendant's) pass book."

It being respectfully submitted that as the only evidence
of the debt were the three bonds put in evidence and the
defendant's pass book (neither of which was in any way
questioned), his Honor erred in not giving defendant credit
at the date of the $600 bond (June 17, 1903) for all pay-
ments made by the defendant to that date and appearing
upon his pass book, by whatever term denominated.

3. Because his Honor erred in overruling defendant's
third exception to the master's report, as follows:

"3. Because the master erred in finding and reporting
that there is due the sum of $567.32, principal and interest,
and the further sum of $56.73 as attorney's fees, on January
19, 1914, a total of $624.05; whereas, he should have found
and reported that there was due on said date the sum of
$456.67 only."

It being respectfully submitted that his Honor erred in
not adopting the calculation, and especially the bases thereof,
submitted by the defendant to the master; and especially

did his Honor err in disallowing the $60 of the payments made by the defendant as interest and premium prior to the date of the $600 loan as evidenced by the bond of June 17, 1903, in evidence, and in therefore depriving the defendant not only of the said $60, but also of the interest thereon since the 17th day of June, 1903.

4. Because his Honor erred in holding that there was a loan to defendant of date May 15, 1901, and that same was carried for twenty-four months; and in holding that "It does appear from the defendant's pass book and otherwise, that there was such prior loan and that said sixty dollars was the interest and premium paid thereon, and that said loan was repaid before the bond and loan of $600; and the master is sustained on these matters; the question of the prior loan, the payment of sixty dollars as interest and premium thereon, the repayment of this loan before the making of the $600 bond and loan, and the refusal of the master to allow defendant credit therefor, on the bonds set up in the complaint.   The correct amount, therefore, was allowed by the master in the calculation, as of the date of the $600 bond, to wit, the sum of two hundred and fourteen and 40-100 dollars;" whereas, he should have held that there was no loan of said date; and his Honor erred in not allowing defendant credit for the entire amounts paid during the time from May 15, 1901, to the 12th day of June, 1903, the date of the $600 bond (the second bond sued on; the withdrawal value of defendant's stock at the date of the first loan, evidenced by the first bond sued on, bearing date September 10th, 1900, being more than such loan).   It being respectfully submitted, that the effect of his Honor's ruling appealed from is to nullify the former decision of this Court in this case, by virtually splitting the $600 bond; and thus depriving the defendant of credit for some of his payments from the time plaintiff undertook to split said bond (May 15, 1901) to June 17, 1903, together with interest on such since said date.

5. Because his Honor erred in decreeing judgment and foreclosure against the defendant for the sum of $624.05, with interest from January 19, 1914; and in allowing interest on the attorney's fees from said date; whereas, he should have given judgment against the defendant for the sum of $456.67 only, with interest thereon from January 19, 1914, and $45.66 attorney's fees.

*Mr. J. Ashby Sawyer,* for appellant, cites: *As to relation of debtor and creditor between defendant and plaintiff:* 62 S. C. 178; 65 S. C. 448; 72 S. C. 406; 81 S. C. 515. *Attorney's fees in nature of costs to be awarded by the Court:* 84 S. C. 463; 27 Cyc. 1785, 1786; 13 A. & E. Enc. of L. (2d ed.) 824.

*Messrs. Wallace & Barron,* for respondent.

November 6, 1914.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

There is at issue only $121.00   The printer's bill will amount to one-half that amount.

The master found against the defendant, as did the Circuit Court, and now the defendant appeals here; and this is the second appeal, though the first appeal was by the plaintiff. 96 S. C. 38, 79 S. E. 796.

The action is one for foreclosure of a mortgage.   It is conceded that plaintiff is entitled to a judgment for foreclosure for $456.67, and attorney's fees, whereas plaintiff claims judgment for $624.05 and attorney's fees.   The exceptions are five, but the issues are only two by appellant's admission: (1) The defendant claims a credit of $60 which was disallowed, and which now amounts to $121.00; (2) the defendant denies to the plaintiff's attorneys interest on their fee of ten per cent. on the recovery, which fee is stipulated in the bond, and is reasonable.

The only testimony is (1) the book issued by the Building & Loan Association to defendant called the pass book; (2) three bonds, executed to the plaintiff by defendant, to wit: 10th September, 1900, penal sum of $400.00; 17th June, 1903, penal sum of $200.00; 9th August, 1904, penal sum of $400.00; (3) sections 3 and 8 of Article II of the laws; sections 1 and 3 of article V of the by-laws; section 2 of article VIII of the by-laws.

The defendant testified that the entries in the pass book contained all the credits claimed; he testified naught else, and there was no other witness. The testimony does not show it, but it is a part of the history of the State that the treasurer of this association defaulted, and there is no one now to explain his books, or this pass book.

The pass book shows that in January, 1897, the defendant became the owner of five shares of the plaintiff's capital stock, of $200.00 per share; and that in each month thereafter he paid $1.00 per month on each of the five shares through 1898; and that the last payment on stock was made April, 1907; and that then, at the end of ten years and three months, the defendant had paid in on his stock subscription $575.00, or $425.00 less than its par and maturing value.

The pass book also shows, that the defendant first became a borrower from the association in October, 1900; he got then $200.00, and that is evidenced by the first bond above recited; he borrowed, also, in July, 1903, $600.00, and that is evidenced by the second bond above recited; he borrowed, also, in September, 1904, $200.00, and that is evidenced by the third bond above recited. The notation on the book of the three several loans is meagre; it consists only of the numerals preceded by the dollar character, on a line with the other entries of that month.

The bonds do not declare what rate of interest the defendant agreed to pay upon the loans made to him; nor does the

pass book; but it does otherwise appear, sec. 3, art. V of the by-laws, fixes the rate at six per cent.

The pass book shows that up to the time of the first loan, October, 1900, the defendant paid $1.00 per share on each of his five shares, and the book denominates that at the top of the first column "installments."

So much is plain. The defendant had up to that time been an investor, and had laid away $5.00 every month, a total of $200.00, the exact amount he borrowed.

The book contains two other columns, one, or the second, is denominated "interest," and the other, or the third, is denominated "premiums." Thus:

| Date | Installments | Interest | Premiums |
|------|--------------|----------|----------|
|      |              |          |          |

In October, 1900, and for the first time, entry was made in the "interest" and "premium" columns; it was then the defendant borrowed $200.00.

Therein, for interest, was written $1.00, and for premium was written .70. Thus:

| Date October 1, 1900 | Installments 5.00 | Interest 1.00 | Premium .70 | $200.00 (marked in pencil) |
|----------------------|-------------------|---------------|-------------|----------------------------|

One month's interest on $200.00, at 6 per cent., is $1.00. There is no parol testimony to explain "premium," but it is explained in sec. 1, art. V of the by-laws. There is no contention by defendant that he was charged a usurious rate of interest upon the loan; the right of the association to charge interest and premium is not gainsaid.

The book carries these two items of $1.00 and .70 in appropriate columns up to June, 1907. In the month of June, 1901, the book reads thus:

| Date June | Installments 5.00 | Interest 3.00 | Premium 1.20 | $400 (written in pencil and penciled out) |
|-----------|-------------------|---------------|--------------|-------------------------------------------|

And it so runs through May, 1903, a period of twenty-four months.

This marginal entry of $400.00 is made the same as were the three other marginal entries for loans, but which other three are evidenced by the bonds sued on, save a pencil mark is not run through the other three entries, as it is through this.

Thereafter, that is, for twenty-four months after June, 1901, the interest column carries an entry of $3.00 and the premium column carries an entry of $1.20.

The interest, therefore, is three times what it was before; that is to say, before it was six per cent. on $200.00, while after it was six per cent. on $400.00.

But the premium is not three times what it was before; and the reason is, the premium was arbitrary under section 1, article V of the by-laws; it was fixed by the offer of the highest premium bid for redemption (sec. 1, art. V, by-laws).

The exact contention of appellant is, that the increase of the interest by $2.00 and the increase of premium by 50 cents, for 24 months after June, 1901, amounts to $60.00; and such increased payments must be applied as credits upon the bond indebtedness sued on; that there is no evidence any other loan upon which these payments may be credited.

The respondent contends, that there was a loan of $400.00 in June, 1901, that these payments should be applied to it, and that loan is not now in issue, but is out of the case.

It is true no witness has sworn to respondent's contention; and no witness has sworn that the $400.00 was not borrowed in June, 1901; the issue of fact must, therefore, be determined by the *circumstances* of the case. Method is always a circumstance from which a conclusion may be drawn.

In the three unquestioned instances wherein the defendant did borrow money, or "redeem his shares," to use the curious and inapt language of the by-laws, that is to say $200.00 in October, 1900, $600.00 in July, 1903, and $200.00 in Sep-

tember, 1904, the numeral and character therefor were entered in the margin of the book in pencil; and in each instance the entry in the interest column was increased at the rate of six per cent., and the entry in the premium column was arbitrarily increased, dependent upon the "bid" for redemption.

In the questioned instance, that of June, 1901, the same circumstances appear; the inference is that in June, 1901, there was a loan of $400.00; that the interest and premium were paid on it for twenty-four months; that the payments thereafter ceased, and other and different methodical payments commenced; that, therefore, the $400.00 was in some fashion paid.

The circumstance that a pencil mark was drawn through the $400.00 marginal entry strengthened this conclusion.

At all events, the circumstances do not warrant the conclusion that the increased methodical and periodical payments of twenty-four months were made to be credited on the $200.00 loan of October 2, 1900.

We conclude this issue of fact for the respondent.

On the other issue, that of interest on attorney's fees, there need not be much said.

The judgment is dated 19th January, 1914; it was for the balance due on the mortgage debt and ten per cent. thereof for attorney's fees. The amount was found by the master to be reasonable, and in that we concur. It was a part of the judgment, and bears interest like the other part of the judgment.

The decree below is affirmed.